ARKANSAS APPLIANCE DISTRIBUTING COMPANY, Robert WHITEHEAD and Van BUNCH *v.* TANDY ELECTRONICS, INC., d/b/a TANDY COMPUTER LEASING

86-274                                            730 S.W.2d 899

Supreme Court of Arkansas
Opinion delivered June 22, 1987

*Meredith Wineland*, for appellants.

*House, Wallace & Jewell, P.A.*, by: *W. Michael Reif*, for appellee.

JOHN I. PURTLE, Justice. On April 18, 1984, the appellants entered into a contract with the appellee for a computer and software equipment. The contract called for total payments of $10,138.00. Subsequently, the appellants defaulted on the contract and appellee demanded the return of the equipment. Appellee then sold the equipment to Radio Shack, a wholly owned subsidiary of the Tandy Corporation, for the amount of $3,325.95. Suit was filed in Pulaski County, Arkansas, for the deficiency.

The trial court decided that Texas law was to be applied. The court also found that the sale to Radio Shack was commercially reasonable. A deficiency judgment in the amount of $5,544.43

was entered in favor of the appellee. On appeal it is argued that the trial court erred in applying Texas law and in finding that the sale was commercially reasonable.

The contract in question was initiated in Pulaski County, Arkansas. It was accepted in Forth Worth, Texas. The contract provided that Texas law would apply. The record does not reveal where the equipment was shipped from. The monthly payments on the contract were mailed from Arkansas to Texas.

When appellee filed its complaint, it attached a copy of the original contract which stated that the laws of Texas governed the transaction. Admittedly, this copy of the contract was almost illegible. This defect was subsequently cured by appellee separately furnishing a legible copy. It was stipulated by the parties that if Texas law applied, then there would be no usury challenge; however, if Arkansas law applied, the contract would be usurious.

The first issue is whether the court properly applied Texas law. Before this issue can be considered, it must be determined whether the appellee gave notice of its intention to rely upon Texas law. Arkansas Rules of Civil Procedure, Rule 44.1 (a) provides:

> A party who intends to raise an issue concerning the law in a jurisdiction or governmental unit thereof outside this state shall give notice in his pleadings or other reasonable written notice.

The same issue was addressed in *Yarbrough* v. *Prentice Lee Tractor Co.*, 252 Ark. 349, 479 S.W.2d 549 (1972). In *Yarbrough*, the appellant argued that the appellee had not given the notice required by Ark. Stat. Ann. § 27-2504 (Supp. 1971), which was the predecessor statute to Rule 44.1 and which was deemed superseded by the adoption of the Arkansas Rules of Civil Procedure. The present Rule is a verbatim recitation of the former statute. In *Yarbrough* the complaint had set out portions of the mortgage which stated that Louisiana law would control. This Court concluded that the notice requirement had been satisfied.

Of significance in the determination of the notice issue is A.R.C.P. Rule 10(c), which states: "A copy of any written instrument or document which is an exhibit to a pleading is a part

thereof for all purposes." In the present appeal, the appellee attached to the complaint a copy of the original contract executed between the parties. The contract clearly stated that Texas law would control. Even though this copy was almost illegible, the defendants' answers to interrogatories confirm that he did sign the contract. We find the facts in this appeal to be similar to those in *Yarbrough* and therefore conclude that the appellee properly notified the appellant that it intended to rely on Texas law.

We also conclude that the court correctly held that Texas law should apply. This Court addressed a similar conflict of laws question concerning the validity of a multistate contract in *Snow* v. *C.I.T. Corp. of the South, Inc.*, 278 Ark. 554, 647 S.W.2d 465 (1983). The Uniform Commercial Code, Ark. Stat. Ann. § 85-1-105(1), affirmatively provides that the parties to a multistate transaction may choose their own law so long as it bears a reasonable relation to the transaction. *Snow*, supra. The parties to this case chose to apply Texas law, and the transaction bears a reasonable relation to Texas. This Court has, moreover, consistently inclined toward applying the law of the state that will make the contract valid rather than void. *Stacey* v. *St. Charles Custom Kitchens*, 284 Ark. 441, 683 S.W.2d 225 (1985); *Grogg* v. *Colley Home Center, Inc.*, 283 Ark. 120, 671 S.W.2d 733 (1984); and *Cooper* v. *Cherokee Village Development Co.*, 236 Ark. 37, 364 S.W.2d 158 (1963).

The seminal conflicts decision involving contracts is *Cooper* v. *Cherokee Village*, supra. In *Cooper*, the parties by the terms of the contract, expressed the intention that the laws of New York would govern the validity and interpretation of the contract. We stated that the parties had the right to select and intend the laws of New York to govern the contract since New York had substantial contacts with the contract. In the present appeal, the contract in question was accepted by the appellee in Fort Worth, Texas. The contract itself provided that Texas law would govern. Moreover, there is no evidence in the record that this is a case of a "cloak for usury" where the parties to a wholly Arkansas contract have sought to avoid the Arkansas usury law by having the validity of the contract determined by the law of a state having no substantial connection with the contract. See *Cooper*, supra. Since the state of Texas had substantial contacts with the contract, and since the parties expressed their intention

in the contract that Texas law would govern its construction, we hold that the trial court was correct in its determination that Texas law should apply.

The appellant also argues that there was no reasonable commercial sale of the equipment. We do not know what the specific requirements for the sale of repossessed goods are under Texas law. According to the record the equipment was sold for $3,325.95. On its face it does not appear that the sale was not commercially reasonable. However, it was the duty of the appellant to prove how Texas law would characterize this transaction and the applicable remedies available to the appellee. The appellant has failed to demonstrate that Texas law would require a different result. Therefore, we affirm the trial court on this point.

Finding no reversible error, we affirm the decision of the trial court.

GLAZE, J., not participating.