The Honorable Thomas Moore State Representative 427 Trivista Left Hot Springs, AR 71901
Dear Representative Moore:
You have requested my opinion on the issue raised by the following question:
 Which state's usury law would apply in a situation where out of state lenders are providing financing for home improvement contractors, and the transactions are retail installment sales contracts with the contractors, which are later assigned to the out of state lender?
RESPONSE
The answer to this question will depend on various facts about each particular home improvement contract under consideration. The determination of which state's usury law is to govern must be made on a case-by-case basis. For this reason, I cannot state a conclusion that would be generally applicable to all of the contracts with which you are concerned. However, I can set forth certain principles that will guide the determination of which state's usury law applies.
My predecessor in office addressed the question of how to determine whether Arkansas' usury law applies to contracts having ties to other states. See Op. Att'y Gen. No. 93-192. In addressing the question, he thoroughly outlined the principles that are considered by the courts in making the determination, as follows:
 In determining whether Arkansas usury law (Art. 19, § 13 of the Ark. Const.) applies to a multi-state contract, Arkansas courts have applied traditional choice of law principles. The courts have, over the years, applied three different theories in determining what law governs the validity of a multi-state contract: (1) the law of the state in which the contract was made; (2) the law of the state in which the contract is to be performed; and (3) the law of the state which the parties have intended to govern the contract, provided that state has a substantial connection with the contract. See Stacy v. St. Charles Custom Kitchens of Memphis, Inc., 284 Ark. 441, 683 S.W.2d 225 (1985); Grogg v. Colley Home Center, Inc., 283 Ark. 120, 671 S.W.2d 733 (1984); Cooper v. Cherokee Village Development Co., 236 Ark. 37, 364 S.W.2d 158 (1963). In determining where a contract was made, courts have generally considered where the contract was drafted, offered for acceptance, negotiated, signed, executed, and delivered. Id. With regard to where a contract is to be performed, courts have considered, among other things, where work is performed, where deliveries are made, and where payments are made. Id. Finally, with respect to the law the parties intend to govern a contract, courts have considered the terms of the contract as well as other actions of the parties bearing on their intent. Id.
 In applying the above principles, the Arkansas Supreme Court has noted a consistent preference for the law of the state that would make the contract valid rather than void, Id.; Arkansas Appliance Distributing Co. v. Tandy Electronics, Inc., 292 Ark. 482, 730 S.W.2d 899 (1987); however, it has also noted a disregard for that preference in cases involving the issue of usury, when the laws of another state become a sham for charging a higher interest rate and avoiding the harsh penalty applied by Arkansas law. See Grogg v. Colley Home Center, Inc., supra.
A contract will not be upheld if it is merely a cloak for usury, such as when the parties to a wholly Arkansas contract have sought to avoid the Arkansas usury law by having the validity of the contract determined by the law of a state having no substantial connection with the contract. Aetna Life Ins. Co. v. Great Nat'l Corp., 818 F.2d 19
(8th Cir. 1987) (citing Cooper v. Cherokee Village Development Co., supra, and Grogg v. Colley Home Center, Inc., supra).
Op. Att'y Gen. No. 93-192 at 2-3. The principles outlined above in Opinion No. 93-192 have not changed since the issuance of that opinion.
In another helpful opinion, my predecessor also listed the following among the factors that should be considered in determining whether Arkansas usury law applies to particular contracts having ties to other states:
 • whether the notes, security agreements, or other contracts evidencing the debts recite that the law of a state other than Arkansas is to govern;
 • whether payments are to be made at an address within or outside Arkansas;
 • whether the obligations are routinely sold to an investor within or outside Arkansas;
 • whether any employees or principals of the lender have authority to bind or otherwise act for the out-of-state lender;
• the nature of the out-of-state lender at issue
Op. Att'y Gen. No. 95-331, Footnote 1.
All of the principles and factors outlined above by my predecessor must be considered and applied to the contracts about which you are concerned in order to determine whether Arkansas' usury law applies to those contracts.
It should be noted that Arkansas' usury law explicitly states an exception in cases to which federal law applies. This exception provision states:
 (ii) The provisions hereof are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property.
Ark. Const., Art. 16, § 13(d)(2).
Thus, even if the contract in question is one that is subject to Arkansas law generally, any applicable federal law that permits a higher interest rate will supersede Arkansas' usury limitations. In this regard, I note that some federal laws do permit out-of-state lenders to charge higher rates of interest than are permitted under Arkansas' usury law. For discussions of some such laws, see Ops. Att'y Gen. Nos. 2002-009; 2001-044. The question of whether a particular lender or contract falls within the purview of a particular superseding federal law will depend largely on the specific nature of the lender in question, as well as upon specific facts about the contract in question. Because I have not been provided with this type of specific information concerning the out of state lenders and the home improvement contracts about which you are concerned, I am unable to determine whether any federal law is applicable. A general review of all possible federal preemptions of Arkansas' usury law is well beyond the scope of an Attorney General opinion. Each contract and lender under consideration must be evaluated separately, upon the basis of its own facts. I note because an evaluation of this nature is purely a private business matter, it should be undertaken by private counsel; I am prohibited by law from engaging in the private practice of law. A.C.A. § 25-16-701.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General